UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAN DUMLER,

     Plaintiff,                                    Civil Action No. 06-10134

v.                                               HON. DENISE PAGE HOOD
                                                 U.S. District Judge
                                                 HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Joan Dumler brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for further fact-finding and consideration.

## PROCEDURAL HISTORY

On August 13, 2002, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging an onset date of March 23, 2000 (Tr. 44-46). After the Social Security Administration (SSA) denied her benefits on February 28, 2003, she made a timely request

-1-

for an administrative hearing, held on December 8, 2004 in Flint, Michigan (Tr. 190). Administrative Law Judge (ALJ) Neil White presided (Tr. 278). Plaintiff, represented by attorney Mikel Lupisella, testified (Tr. 191-201). Mary Williams, a Vocational Expert (VE) also testified (Tr. 202-203). On April 22, 2005, ALJ White found that pursuant to Medical-Vocational Rule 202.20, Plaintiff retained the ability to perform the full range of light work (Tr. 22). On November 25, 2005 the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on January 10, 2006.

## BACKGROUND FACTS

Plaintiff, born July 10, 1956 was age 48 when the ALJ issued his decision (Tr. 7, 34). She completed high school and worked previously as an assembler and sorter (Tr. 70, 75, 78). Plaintiff alleges disability as a result of bilateral Carpal Tunnel Syndrome ("CTS"), arthritis, herniated discs, and degenerative disease of the lower back (Tr. 69).

    **A.**    **Plaintiff's Testimony**

Plaintiff, 48, testified that she stood 5' 7" and weighed 165 pounds (Tr. 191). Plaintiff, a high school graduate, reported that she lived in Flint, Michigan with her husband (Tr. 191). She stated that she had ceased work on January 8, 2001 due to arm numbness and lower back and hip pain (Tr. 191). She indicated she had received a Workers' Compensation settlement, but did not currently receive benefits (Tr. 192).

Plaintiff reported that she sought regular treatment from Drs. Aquino and Orbach, who both opined that she was disabled due to spinal problems (Tr. 193). She indicated that she previously treated with Dr. Bakri before his retirement (Tr. 194). She alleged continued left

-2-

finger, hand, and arm numbness, adding that she also experienced "stabbing pains" in her right hip (Tr. 196).

Plaintiff testified that she worked at General Motors for 20 years before becoming disabled (Tr. 196). She indicated that although she had undergone surgery for CTS, she continued to experience difficulty lifting and performing fine and gross manipulations (Tr. 197). She denied belonging to clubs or organizations, but reported that she continued to shop and vacuum regularly unless she experienced back pain (Tr. 197). She indicated that Flexeril, which she took daily for back problems, created fatigue (Tr. 198). Despite Flexeril's side effects, she stated that she avoided taking frequent daytime naps which she felt disrupted her regular sleep schedule (Tr. 198).

Plaintiff estimated that she could sit for one hour, stand for five minutes, and walk for 30-45 minutes before experiencing discomfort (Tr. 198-199). She indicated that she could lift approximately five pounds and required the use of a railing when climbing and descending stairs (Tr. 199). She alleged further that she used a heating pad "constantly all day long," adding that she also relieved her discomfort by elevating her feet (Tr. 199). She testified that in addition to her above-stated limitations, she experienced difficulty bending, squatting, and reaching overhead (Tr. 200). She concluded her testimony by stating that she experienced continual fatigue (Tr. 200).

    **B.    Medical Evidence**

    **i. Treating Sources**

In January, 2000, M. Bakri, M.D. reported that Plaintiff experienced arthritis and

CTS, dictating work restrictions prohibiting standing for extended periods (Tr. 120). The following month, Plaintiff reported numbness in both hands (Tr. 119). In May through November of 2000, examination notes indicate that Plaintiff experienced wrist and arm pain and numbness to the extent that it interrupted her sleep (Tr. 115-116). In December, 2000, an EMG study showed evidence of bilateral median dysfunction at the wrist (Tr. 124). January, 2001 exam notes indicate that Plaintiff stopped working due to hand, elbow, shoulder, and back pain (Tr. 114). In June, 2001, Plaintiff underwent left carpal tunnel release without complications (Tr. 107-108). However, in August, 2001, Plaintiff reported to Dr. Bakri that surgery had not improved her condition (Tr. 111). A cervical spine MRI performed in February, 2002 showed advanced degenerative spondylosis from C4-C5 through C6-C7 and moderate narrowing at C4-C5 (Tr. 156). An MRI of the lumbosacral spine showed a "tiny central disc herniation at L3-L4" (Tr. 155). Neurologist Dr. Gavin I. Awerbuch noted the same month that an EMG showed bilateral CTS and right C6 radiculopathy (Tr. 152). Dr. Awerbuch recommended wearing wrist splints and advised Plaintiff to remain "off work status" (Tr. 151). In April, 2002 Dr. Awerbuch, noting that Plaintiff could neither squat nor recover, opined that she should begin physical and occupational therapy (Tr. 147). In June, 2002, Dr. Awerbuch discussed the relative merits of conservative care versus surgery; Plaintiff opted to "reserve surgery as a last resort" (Tr. 146). In September, 2002, Rommel Aquino, M.D. examined Plaintiff, finding full muscle strength in all extremities (Tr. 109). The following November, orthopedic surgeon Herbert Roth Jr., M.D. reported "C4-C7 spondylosis with associated stenosis" along with symptoms

of "early myelopathy" (Tr. 140). In September, 2003, Dr. Awerbuch noted that Plaintiff reported dropping objects as well as difficulty holding a steering wheel due to hand numbness (Tr. 182). In April, 2004, MRI imaging studies showed advanced degenerative spondylosis at C5-C6 and multilevel degenerative spondylosis at L4-L5 (Tr. 186).

### ii. Consultive Sources

In November, 2002, Samiullah H. Sayyid, M.D. examined Plaintiff on behalf of the SSA (Tr. 157-161). Sayyid observed normal muscle tone, bulk and strength, but noted cervical spine tenderness (Tr. 158). He noted further that Plaintiff was able to squat and get on and off the examining table (Tr. 158).

In January, 2003, Paul LaClair, M.D. examined Plaintiff, recording that she complained of intermittent numbness and tingling in the left and right middle fingers, as well as additional numbness in the left thumb and index fingers (Tr. 164). Plaintiff also reported neck and lower right back pain, but admitted that she experienced partial relief by exercising (Tr. 164-165). LaClair noted 5/5 strength in all muscles tested (with the exception of the right elbow extension which was measured at 4+/5) as well as the absence of muscle atrophy (Tr. 165). He concluded that although Plaintiff experienced a congenital shortening of the right foot and loss of ankle range of motion, it did not significantly limit her functionality (Tr. 165).

The next month a Physical Residual Functional Capacity Assessment found that Plaintiff retained the ability to lift 20 pounds occasionally and 10 frequently, along with an ability to stand, walk, or sit for approximately six hours in an eight-hour workday (Tr. 173).

Plaintiff was deemed capable of only limited pushing and pulling in the upper and lower extremities due to CTS and a congenital foot deformity (Tr. 173). The report found further that Plaintiff was limited to occasional balancing, stooping, kneeling, crouching, crawling, and ramp/stair climbing, and completely restricted from all ladder, rope, or scaffold climbing (Tr. 174). She was further limited to frequent (rather than constant) handling and fingering (Tr. 175). In addition, the assessment found that Plaintiff should avoid even moderate exposure to vibration (Tr. 176). The report concluded by stating that Plaintiff's allegations of disability were not fully credible, noting that she exhibited a good range of motion and strength in all joints (Tr. 177).

### C. Vocational Expert Testimony

VE Mary Williams classified Plaintiff's former work as an assembler and sorter as unskilled at the sedentary to light level of exertion (Tr. 100, 202).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ White found the severe impairments of "degenerative disc disease of the lumbar spine with bulging, degenerative disc disease in the cervical spine with bulging and status post carpal tunnel surgery" (Tr. 18, 21). He determined that although Plaintiff had severe impairments, they neither met nor equaled any impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 19, 21).

Giving Plaintiff "the benefit of the doubt," the ALJ concluded that Plaintiff was unable to perform her past relevant work as an assembler at the light exertional level or her past work as a sorter (sedentary) (Tr. 19). However, based on Plaintiff's age, education, and

work experience, he found that she retained the residual functional capacity to perform the full range of light work pursuant to the Medical-Vocational Guidelines (Tr. 22). The ALJ deemed Plaintiff's allegations of disability only partially credible, citing Drs. LaClair and Sayyid's examinations which yielded normal results along with the lack of record evidence suggesting aggressive treatment (Tr. 19). The ALJ also noted that Plaintiff had recently collected a "generous" Workers' Compensation settlement, suggesting that she was not "fully motivated towards working" (Tr. 19).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Medical-Vocational Rules

Plaintiff argues that the ALJ erroneously relied on the Appendix 2 Medical-Vocational Rules rather than vocational expert testimony to deny her benefits at Step Five of his analysis. *Brief* at 7. She submits that the Residual Functional Assessment by the state-

hired physician, along with treating physicians' reports, show the existence of non-exertional limitations, requiring the ALJ consult the VE. *Id.*[1]

At Step Five of the administrative analysis, the burden of proof shifts to the Commissioner to establish that the claimant retains the residual functional capacity to perform specific jobs existing in the national economy. *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984). "In many cases, the Commissioner may carry this burden by applying the medical-vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a conclusion of 'disabled' or 'not disabled' based on the claimant's age and education and on whether the claimant has transferable work skills." *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004). While "in the case of a non-exertional impairment, the grids may be used to direct a conclusion if the claimant's non-exertional impairments do not significantly reduce the underlying job base . . . the ALJ must back such a finding of negligible effect with the evidence to substantiate it." *Lopez v. Barnhart* 78 Fed.Appx. 675, 679, 2003 WL 22351956, *4 (10th Cir. 2003)(internal citations omitted). Pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e) and SSR 85-15, if a nonexertional limitation substantially limits a claimant's ability to perform other work, reliance on the grids is improper. "[W]here a nonexertional limitation might substantially

---

[1] 20 C.F.R. § 404.1569a(c)(v),(vi), listing the "non-exertional" limitations, includes environmental limitations as well as "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."

reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *see also Wilson, supra*, at 548.

The ALJ stated that "[b]ased on an exertional capacity for light work, and the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.20," apparently justifying the use of the grids on a finding that Plaintiff experiences only minimal non-exertional limitations as a result of CTS and other impairments found at Step Two of his analysis (Tr. 22). However, the ALJ's finding that Plaintiff experienced only insignificant deficiencies as a result of CTS is flawed for a number of reasons.

First, although the ALJ deemed Plaintiff's non-exertional limitations insubstantial to the extent that he did not consult the VE, this conclusion stands at odds with his Step Two finding that Plaintiff experienced CTS along with various back problems.[2] While Plaintiff's back problems might arguably limit only Plaintiff's *exertional* limitations, CTS, which affects finger, hand, wrist, and elbow functions, clearly implicates *non-exertional* as well as exertional abilities. The ALJ implicitly acknowledged that CTS created more than minimal work-related limitations by including it among Plaintiff's Step Two impairments. *Farris v. Secretary of HHS*, 773 F.2d 85, 90 (6th Cir. 1985).

---

[2] As noted above, a VE was present at the administrative hearing. However, her testimony was limited to a brief discussion of Plaintiff's past relevant work (Tr. 202). The ALJ did not pose a hypothetical question or ask for a jobs finding.

Second, and more obviously, none of Plaintiff's treating or consultive sources support the ALJ's finding of a complete absence of non-exertional limitations. Assuming, *arguendo*, that the ALJ justifiably rejected EMG studies showing CTS along with all the other treating source reports showing the presence of CTS, the consultive physicians hired by Defendant also found that CTS created more than minimal limitations. Dr. Sayyid, finding generally normal results, nonetheless observed "paresthesia of the left hand" (Tr. 158). Similarly, Dr. LaClair noted that Plaintiff experienced moderate right elbow limitations (Tr. 165). Most significantly, the Residual Functional Capacity Assessment performed in February, 2002 found the presence of a number of non-exertional work limitations including postural, manipulative, and environmental restrictions on Plaintiff's work activities (Tr. 174-176).[3]

The ALJ's finding of a complete absence of non-exertional limitations stands unsupported by substantial evidence. His resulting failure to craft a hypothetical question including those non-exertional limitations and then elicit job findings mandates a remand for further fact-finding. *See Williams v. Barnhart*, 338 F.Supp.2d 849, 862 (M.D.Tenn. 2004)(remanded for further fact-finding on the basis that "where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual

---

[3]Aside from overwhelming evidence supporting the existence of non-exertional limitations, the administrative opinion contains internal inconsistencies. The ALJ's acknowledgment that Plaintiff cannot perform her former jobs of assembler and sorter at the light and sedentary exertional levels (Tr. 19) stands at odds with his ultimate finding that Plaintiff can perform a *full range* of exertionally light work (emphasis added) (Tr. 21-22)

vocational qualifications to perform specific jobs, which is typically obtained through [VE] testimony"); *See also Sanchez v. Barnhart*, 329 F.Supp.2d 445, 454 (S.D.N.Y.,2004) (Remanding for "further consideration and clarification," citing the need to " make a precise and informed decision in applying the medical evidence to the universe of jobs available in the economy, as required in the fifth part of the disability test.")

In closing, I note that although Plaintiff requests remand for an award of benefits as well as for further fact-finding, the errors in the administrative decision, while critical, do not suggest that Plaintiff is automatically entitled to benefits. Indeed, upon considering the VE's testimony, the ALJ may very well find that substantial evidence supports a non-disability finding. Thus, I find that pursuant to *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) this case should be remanded for further proceedings consistent with this Report and Recommendation.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for further fact-finding.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 16, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 16, 2006.

s/Susan Jefferson
Case Manager